**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

JACOB D. GILLMORE,

*Plaintiff*,

v.

FINANCIAL INDUSTRY REGULATORY AUTHORITY, INC.,

*Defendant*.

Case No. 1:26-cv-00065-SLS

The Honorable Sparkle L. Sooknanan

**DEFENDANT FINANCIAL INDUSTRY REGULATORY AUTHORITY, INC.'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 8, Defendant Financial Industry Regulatory Authority, Inc. ("FINRA"), by and through its undersigned counsel, moves this Court for an order dismissing with prejudice the claim for Declaratory Judgment that Plaintiff Jacob D. Gillmore ("Plaintiff") asserts against FINRA in his complaint ("Complaint") [ECF No. 1].

WHEREFORE, FINRA, by and through its undersigned counsel, and for the reasons set forth in the Statement of Points and Authorities in Support of this Motion, respectfully requests that the Court enter an Order dismissing the Complaint with prejudice.

Dated: March 23, 2026

Respectfully submitted,

*/s/ John P. Mitchell*

Anthony F. Jankoski (DC #90022125)
FAEGRE DRINKER BIDDLE & REATH LLP
1500 K Street N.W., Suite 1100
Washington, D.C. 20005
Tel: +1 202 230 5000
Fax: +1 202 842 8465
anthony.jankoski@faegredrinker.com

John P. Mitchell (admitted *pro hac vice*)
FAEGRE DRINKER BIDDLE & REATH LLP
105 College Road East, Suite 300
Princeton, New Jersey 08542-0627
Tel: (609) 716-6586
Fax: (609) 799-7000
john.mitchell@faegredrinker.com

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JACOB D. GILLMORE,<br><br>*Plaintiff*,<br><br>v.<br><br>FINANCIAL INDUSTRY REGULATORY AUTHORITY, INC.,<br><br>*Defendant*. | Case No. 1:26-cv-00065-SLS<br><br>The Honorable Sparkle L. Sooknanan |

**DEFENDANT FINANCIAL INDUSTRY REGULATORY AUTHORITY, INC.'S STATEMENT OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

# TABLE OF CONTENTS


I. INTRODUCTORY STATEMENT ..... 1
II. FACTUAL SUMMARY ..... 3
  A. Origins of the Exchange Act ..... 3
  B. FINRA Regulates Its Broker-Dealer Members Subject to SEC Oversight Pursuant to the Exchange Act and Its Own Rules. ..... 4
  C. FINRA Rule 6440 ..... 5
  D. The Complaint ..... 6
III. Legal Standard ..... 7
IV. THE COMPLAINT SHOULD BE DISMISSED. ..... 8
  A. The Court Lacks Subject Matter Jurisdiction. ..... 8
    1. Plaintiff Lacks Standing. ..... 8
    2. The Declaratory Judgment Act Does Not Confer Federal Jurisdiction. ..... 9
  B. Regulatory Immunity Bars the Complaint. ..... 10
  C. Plaintiff Has No Private Right of Action Against FINRA. ..... 13
  D. Plaintiff Fails to State a Claim for Declaratory Judgment. ..... 14
    1. Declaratory Relief Is Not a Freestanding Cause of Action. ..... 14
    2. Plaintiff Fails to State an "Actual Controversy." ..... 14
  E. The Complaint Fails to Satisfy the Requirements of Rule 8. ..... 15
V. CONCLUSION ..... 16

## I. INTRODUCTORY STATEMENT

FINRA is a private, not-for-profit self-regulatory organization ("SRO") created in 2007 through the merger of the regulatory and enforcement functions of the National Association of Securities Dealers ("NASD") and the New York Stock Exchange ("NYSE"). *See* Order Approving Proposed Rule Change to Amend the By-Laws of NASD, 72 Fed. Reg. 42169 (Aug. 1, 2007). FINRA's regulatory duties are established by Congress and require FINRA to conduct daily regulation of the national securities markets, subject to comprehensive oversight from the Securities and Exchange Commission ("SEC").[1]

The Securities Exchange Act of 1934 ("Exchange Act") requires FINRA to adopt rules designed to prevent fraud and to protect investors. FINRA rules, which are approved by the SEC, are "part of the apparatus of federal securities regulation." *Kurz v. Fid. Mgmt. & Rsch. Co.*, 556 F.3d 639, 641 (7th Cir. 2009). The SEC "may abrogate, add to, and delete from all FINRA rules as it deems necessary." *Aslin v. FINRA*, 704 F.3d 475, 476 (7th Cir. 2013) (citing 15 U.S.C. § 78s(b)(1), (c)). FINRA performs its regulatory functions, including the initiation of trading and quoting halts of OTC equity securities, pursuant to its rules approved by the SEC.

This case relates to FINRA Rule 6440, which authorizes FINRA to initiate trading and quoting halts in certain circumstances. Specifically, the Complaint requests a judicial declaration regarding FINRA's authority to issue halts under Rule 6440. The Complaint does not identify any halt explicitly, nor does it describe any form of harm incurred by Plaintiff. Factually, Plaintiff avers merely that he is a "market participant" and then concludes that he possesses "legally cognizable interests" affected by FINRA. Compl. ¶¶ 6, 13. Indeed, Plaintiff provides no underlying factual

---

[1] The national securities markets include the national securities exchanges (*e.g.*, Nasdaq, NYSE, Cboe) and the over-the-counter ("OTC") market. Equity securities not listed on a national securities exchange may be traded and quoted in the OTC market.

basis for any of the conclusory statements in his brief, four-page Complaint. *See generally* Compl. Such vague and conclusory allegations are insufficient to state any claim, and the Complaint suffers from multiple other legal defects:

***First***, this Court lacks subject-matter jurisdiction over Plaintiff's claims because Plaintiff does not establish any of the elements necessary to support standing, and his single cause of action for declaratory relief does not confer federal jurisdiction.

***Second***, Plaintiff cannot overcome the immunity applicable to FINRA's regulatory activities, including the issuance of a trading and quoting halt. With respect to FINRA's authority under Rule 6440, courts have consistently applied regulatory immunity to decisions to suspend trading in securities—a "quintessentially regulatory function." *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d 428, 454 (S.D.N.Y. 2013). Since Plaintiff's Complaint is predicated entirely on FINRA's regulatory authority to halt trading, regulatory immunity bars the Complaint, requiring dismissal with prejudice.

***Third***, it is well established that a plaintiff cannot pursue a private right of action against FINRA for alleged violations of its own rules (which necessarily includes Rule 6440). The lack of a private right of action bars Plaintiff's Complaint, requiring dismissal with prejudice.

***Finally***, even if the Complaint could overcome these multiple independent deficiencies, dismissal is still warranted because Plaintiff fails to state a single claim for relief. Declaratory judgment is not a freestanding cause of action – it is a remedy – and Plaintiff proffers no other cause of action. But even if it were an independent cause of action (it is not), Plaintiff alleges no actual controversy and therefore fails to advance the required elements of declaratory relief, which renders the Complaint an improper request for an advisory opinion.

Alternatively, based on Plaintiff's failure to identify any specific halt or injury to himself, the Complaint violates Rule 8 because it lacks sufficient detail to put FINRA on notice of Plaintiff's claim(s) to allow FINRA to mount an adequate defense. This violation of Rule 8 further justifies dismissal of the Complaint. Fed. R. Civ. P. 41(b) (authorizing dismissal of an action for failure to comply with Federal Rules).

Accordingly, for the reasons outlined in this Statement of Points and Authorities, the Complaint should be dismissed.

## II. FACTUAL SUMMARY

### A. Origins of the Exchange Act

"[T]he securities industry in the United States has engaged in extensive self-regulation for more than two centuries," dating back to the Philadelphia Stock Exchange's founding in 1790. *Alpine Sec. Corp. v. FINRA*, 121 F.4th 1314, 1319 (D.C. Cir. 2024), *cert. denied*, 145 S. Ct. 2751 (2025); *see also* Marianne K. Smythe, *Government Supervised Self-Regulation in the Securities Industry and the Antitrust Laws*, 62 N.C.L. Rev. 475, 480 (1984). When Congress adopted the modern securities laws in the 1930s, it preserved and built upon the self-regulatory framework that "preexisted federal regulation." *Bernstein v. Lind-Waldock & Co.*, 738 F.2d 179, 186 (7th Cir. 1984). Under the Exchange Act, and the Maloney Act of 1938, Congress "[c]reat[ed] a system of 'cooperative regulation,' in which the task of regulating securities traders would 'be largely performed by representative organizations of investment bankers, dealers, and brokers,'" with "Government playing a residual role." *Alpine*, 121 F.4th at 1320 (quoting S. Rep. No. 75-1455, at 4 (1938) and William O. Douglas, *Democracy and Finance* 82 (J. Allen ed. 1940)).

Pursuant to that cooperative framework, private SROs continue to exercise frontline regulation over their members, with the SEC playing "a supervisory role by 'exercising appropriate supervision in the public interest.'" *Id.* (quoting S. Rep. No. 75-1455, at 4); *see also Saad v. SEC*

(*Saad II*), 873 F.3d 297, 299-300 (D.C. Cir. 2017). The Exchange Act requires any broker-dealer seeking to sell securities publicly to join an association of broker-dealers registered as a national securities association or to associate themselves with a member, unless the person transacts securities solely on a securities exchange of which it is a member, or the SEC exempts the person from membership for other reasons. *See* 15 U.S.C. § 78o(a)(1)-(2), (b)(1), (b)(8)-(9); *Alpine*, 121 F.4th at 1321 (recognizing the SEC's statutory "authority to exempt individual traders from that membership requirement"). FINRA is currently the only registered national securities association, and, like its predecessor NASD, serves as the frontline regulator for its broker-dealer member firms and for persons associated with its members. 15 U.S.C. § 78o-3(b)(4).

### B. FINRA Regulates Its Broker-Dealer Members Subject to SEC Oversight Pursuant to the Exchange Act and Its Own Rules.

The Exchange Act imposes extensive obligations on SROs. For example, each national securities exchange and national securities association must register with the SEC, submit its proposed rule changes to the SEC, and "enforce compliance" with the Exchange Act and "its own rules" by its members and persons associated with its members. 15 U.S.C. § 78s(a), (b), (g)(1). The rules of national securities exchanges and national securities associations must be "designed to prevent fraudulent and manipulative acts and practices, to promote just and equitable principles of trade," and "to protect investors and the public interest." *Id.* §§ 78f(b)(5), 78o-3(b)(6). This statutory framework—"repeatedly amended" over nearly a century "to bolster the self-regulatory scheme," *Alpine*, 121 F.4th at 1321—reflects Congress's consistent judgment that private self-regulation of the securities industry is preferable to direct governmental regulation, which would threaten "a pronounced expansion of" the SEC, with all the attendant "evils of bureaucracy." S. Rep. No. 75-1455, at 3-4 (1938). Congress has repeatedly sought to "preserve[ ] and

strengthen[ ]" the "self-regulatory" model. S. Rep. No. 94-75, at 23 (1975); *see Alpine*, 121 F.4th at 1321.

FINRA is not part of the government; it is a private "Delaware not-for-profit corporation." *See*, *e.g.*, *Scottsdale Cap. Advisors Corp. v. FINRA* (*Scottsdale IV*), 678 F. Supp. 3d 88, 94-98 (D.D.C. 2023), *rev'd in part on other grounds by Alpine*, 121 F.4th 1314; *Kim v. FINRA*, 698 F. Supp. 3d 147, 157-58 (D.D.C. 2023); *Alpine*, 121 F.4th at 1318, 1321. FINRA exercises its self-regulatory authority in accordance with the Exchange Act and under the SEC's close supervision. If FINRA does not appropriately discharge its self-regulatory responsibilities, the SEC can impose limitations on its activities or suspend or revoke its status as an SRO, among other measures. 15 U.S.C. § 78s(h).

### C. FINRA Rule 6440

Pursuant to authority authorized by the Exchange Act, FINRA performs several regulatory functions in the OTC market, including among others, maintaining a symbols directory for OTC equity securities, *see https://otce.finra.org/otce/symbol-directory*, and adopting rules regarding quoting and trading in OTC equity securities, *see* FINRA Rule 6400 Series. The FINRA rules, and amendments thereto, that are relevant to the issues presented in this case were approved by the SEC. *See, e.g.*, SEC Release No. 34-54952, 71 Fed. Reg. 78242 (Dec. 18, 2006) (SEC order approving amendments to FINRA Rule 6440).

FINRA Rule 6440 explicitly authorizes FINRA to direct its members to halt trading and quoting in an OTC equity security when it is necessary to protect investors and the public interest, including where "FINRA determines that an extraordinary event has occurred or is ongoing that . . . has caused or has the potential to cause major disruption to the marketplace or significant

uncertainty in the settlement and clearance process ('Extraordinary Event Halt')." FINRA Rule 6440(a)(3).[2]

In approving an amendment to Rule 6440, which expanded FINRA's authority to halt trading and established the Extraordinary Event Halt, the SEC recognized that FINRA "would exercise significant discretion in determining whether a particular event affecting a security warranted a trading and quotation halt." SEC Release No. 34-54952, 71 Fed. Reg. 78242-01, 78243. In announcing the rule change approved by the SEC, FINRA explained that it would exercise "its discretion, based on the facts and circumstances of a particular event" to determine if a trading halt "is the appropriate mechanism to protect investors and ensure a fair and orderly marketplace." NASD Notice to Members 07-22 (May 7, 2007).[3] When exercising its discretion to impose a trading halt, FINRA considers several factors, which are outlined in the Supplementary Material contained in the rule. *See* FINRA Rule 6440, Supplementary Material .02.

### D. The Complaint

In the Complaint, Plaintiff acknowledges and concedes that FINRA has authority to issue "temporary trading halts." Compl. ¶ 9. In this case, however, Plaintiff seeks relief in the form of a judicial declaration "that FINRA lacks authority . . . to impose or structure a trading halt resulting in a permanent or functionally permanent suspension of trading absent an SEC order . . . ." *Id.* ¶¶ 2,

---

[2] FINRA Rule 6440 is publicly available at https://www.finra.org/rules-guidance/rulebooks/finra-rules/6440-0 (last accessed March 19, 2026). In deciding a motion to dismiss, "[a] federal court may take judicial notice of 'a fact that is not subject to reasonable dispute' if it . . . 'can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'" *Hurd v. District of Columbia*, 864 F.3d 671, 686 (D.C. Cir. 2017) (quoting Fed. R. Evid. 201(b)). Thus, the Court can take judicial notice of the FINRA rules and other documents found on FINRA's website that are relied upon in this Motion.

[3] *Available at* https://www.finra.org/rules-guidance/notices/07-22 (last accessed March 19, 2026). FINRA Rule 6440 was formerly NASD Rule 6660, which is discussed in this NASD Notice to Members.

12, 15-16. Plaintiff expressly concedes that he "does not challenge the prudence, wisdom, or market impact of any regulatory decision." *Id.* ¶ 3. And indeed, Plaintiff does not reference any specific trade halt ever issued by FINRA, much less a permanent one, beyond ambiguously described "circumstances." *Id.* ¶¶ 10, 13.

## III. Legal Standard

Federal Rule of Civil Procedure 12(b)(1) requires a court to dismiss a complaint if it lacks subject matter jurisdiction. *See also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). Plaintiffs bear the burden of establishing subject matter jurisdiction. *Donahue v. United States*, 870 F. Supp. 2d 97, 102 (D.D.C. 2012). And, although the Court will treat all well-pleaded facts as true, the Court is not required to "accept unsupported inferences or legal conclusions cast as factual allegations." *Id.* at 102-03. In considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), the Court "may consider materials beyond the pleadings 'as it deems appropriate to resolve the question whether it has jurisdiction to hear the case.'" *Id.* at 103 (citation omitted).

For a complaint to survive a Rule 12(b)(6) motion to dismiss, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Legal conclusions, however, are "not entitled to the assumption of truth." *Id.* at 679. When evaluating a defendant's Rule 12(b)(6) motion, the court may consider "the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the court] may take judicial notice." *Hurd*, 864 F.3d at 678 (internal quotation marks and citation omitted).

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft*, 556 U.S. at 677-78.

However, "[a]s the Court held in *Twombly* . . . [while] the pleading standard Rule 8 announces does not require 'detailed factual allegations,' [] it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. at 678 (citing *Twombly*, 550 U.S. at 555, and *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do. . . . Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*. (citing *Twombly*, 550 U.S. at 557). Even under liberal notice pleading standards, such failure to articulate a factual or legal basis for relief justifies dismissal under Rule 8. *Karim–Panahi v. U.S. Congress*, 105 Fed. App'x 270, 273-74 (D.C. Cir. 2004); *see also Ciralsky v. CIA*, 355 F.3d 661, 669 (D.C. Cir. 2004) (explaining that "Rule 41(b) authorizes the court to dismiss either a claim or an action because of the plaintiff's failure to comply with" Rule 8); *Poblete v. Indymac Bank*, 657 F. Supp. 2d 86, 96 (D.D.C. 2009) (dismissing plaintiff's claims pursuant to Rule 8 because they were comprised of nothing more than bald references to sources of relief).

## IV. THE COMPLAINT SHOULD BE DISMISSED.

### A. The Court Lacks Subject Matter Jurisdiction.

#### 1. Plaintiff Lacks Standing.

The D.C. Circuit has explained that a motion to dismiss for lack of standing constitutes a motion under Rule 12(b)(1) of the Federal Rules of Civil Procedure because "the defect of standing is a defect in subject matter jurisdiction." *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987). To demonstrate standing, a plaintiff must show: (1) an "injury in fact," which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical; (2) a causal connection between the alleged injury and the conduct at issue that is fairly traceable to the defendant; and (3) that it is likely, not merely speculative, the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).

Here, Plaintiff's brief, conclusory Complaint fails to satisfy any of these factors – there is no concrete, particularized injury alleged at all, much less one that is actual or imminent – nor is there a particular trade halt that Plaintiff identifies in the Complaint. *See generally* Compl. Accordingly, Plaintiff fails to allege any causal connection because the Complaint is bereft of any allegations that could establish the requisite connection. Finally, there is absolutely no support in the Complaint for how a judicial declaration would provide Plaintiff redress. As a result of his failure to allege any of the required elements of standing, Plaintiff lacks standing to pursue the claim alleged in the Complaint, and the Complaint should be dismissed for lack of subject matter jurisdiction.

**2. The Declaratory Judgment Act Does Not Confer Federal Jurisdiction.**

In the Complaint, Plaintiff seeks only a judicial declaration, under 28 U.S.C. § 2201, and asserts no other cause of action. *See* Compl. ¶ 1. The Complaint therefore is insufficient to establish subject matter jurisdiction. "It is a 'well-established rule that the Declaratory Judgment Act is not an independent source of federal jurisdiction.' Rather, 'the availability of [declaratory] relief presupposes the existence of a judicially remediable right.'" *Ali v. Rumsfeld*, 649 F.3d 762, 778 (D.C. Cir. 2011) (affirming dismissal of declaratory judgment cause of action brought pursuant to a federal law) (citing *C & E Servs., Inc. of Wash. v. D.C. Water & Sewer Auth.*, 310 F.3d 197, 201 (D.C. Cir. 2002)); *see also Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950) ("The operation of the Declaratory Judgment Act is procedural only. Congress enlarged the range of remedies available in the federal courts but did not extend their jurisdiction.") (cleaned up). Plaintiff does not assert any cause of action in the Complaint because the relief sought pursuant to the Declaratory Judgment Act does not confer jurisdiction in this Court. Accordingly, the Court lacks subject matter jurisdiction, and the Complaint should be dismissed.

**B. Regulatory Immunity Bars the Complaint.**

The Complaint apparently arises entirely from FINRA's regulatory activities pursuant to Rule 6440. Every circuit court that has considered the issue has held that SROs are absolutely immune "from suit for conduct falling within the scope of [their] regulatory and general oversight functions." *D'Alessio v. N.Y. Stock Exch., Inc.*, 258 F.3d 93, 105 (2d Cir. 2001); *In re Series 7 Broker Qualification Exam Scoring Litig.*, 548 F.3d 110, 114 (D.C. Cir. 2008) ("When an SRO acts under the aegis of the Exchange Act's delegated authority, it is absolutely immune from suit," including for any purported "improper performance of regulatory, adjudicatory, or prosecutorial duties delegated by the SEC.").[4]

The immunity granted to SROs is crucial to an SRO's ability to perform its regulatory tasks within the federal framework and is consistent with the system of cooperative regulation enacted by Congress "under which [SROs] . . . exercise a primary supervisory role subject to ultimate SEC control." *Sparta Surgical*, 159 F.3d at 1213-14; *see also Dexter v. Depository Tr. & Clearing Corp.*, 406 F. Supp. 2d 260, 263 (S.D.N.Y. 2005) (absolute immunity is "an integral part of the American system of securities regulation"), *aff'd*, 219 F. App'x 91 (2d Cir. 2007). To determine

[4] *See also Weissman v. NASD, Inc.*, 500 F.3d 1293, 1296 (11th Cir. 2007) ("SROs are protected by absolute immunity when they perform their statutorily delegated adjudicatory, regulatory, and prosecutorial functions."); *DL Cap. Grp. LLC v. NASDAQ Stock Market, Inc.*, 409 F.3d 93, 97 (2d Cir. 2005) (when an SRO engages in conduct consistent with the powers delegated to it pursuant to the Exchange Act and the regulations and rules promulgated thereunder, SRO is immune from suit); *Partnership Exch. Sec. Co. v. NASD*, 169 F.3d 606, 608 (9th Cir. 1999) (SRO is immune from suit when acting under the aegis of the Exchange Act's authorization); *Sparta Surgical Corp. v. NASD*, 159 F.3d 1209, 1213 (9th Cir. 1998) (an SRO is absolutely "immune from liability based on the discharge of its duties under the Exchange Act"), *abrogated on other grounds by Merrill Lynch, Pierce, Fenner & Smith Inc. v. Manning*, 578 U.S. 374 (2016); *Austin Mun. Sec. Inc. v. NASD*, 757 F.2d 676, 679 (5th Cir. 1985) (SRO has absolute immunity from claims arising within the scope of its duties); *Browne v. NASD*, No. 3:05-CV-2469, 2006 U.S. Dist. LEXIS 35507, *13 (N.D. Tex. May 31, 2006) ("The Fifth Circuit has explicitly held that NASD and its disciplinary officers have absolute immunity from further prosecution for personal liability on claims arising within the scope of their official duties.") (internal quotations and citation omitted).

an SRO's entitlement to immunity, courts examine the nature of the function performed and not "an SRO's subjective intent or motivation." *Weissman*, 500 F.3d at 1297.[5]

Here, Plaintiff's one claim against FINRA relates exclusively to its authority to halt trading and quoting of a security. Courts have consistently found that suspending trading is a regulatory activity to which absolute regulatory immunity applies. *See, e.g.*, *Sparta Surgical*, 159 F.3d at 1214 ("[W]hen [NASD] acts in this capacity to suspend trading, [it] is performing a regulatory function cloaked in immunity."); *In re Facebook*, 986 F. Supp. 2d at 454 (decision not to halt trading of a security dismissed on regulatory immunity grounds because "[t]he capacity to suspend trading . . . is a quintessentially regulatory function"); *Tawil*, 2023 U.S. Dist. LEXIS 117247, *2-3 ("Suspending trading . . . is precisely the kind of activity FINRA can undertake in its quasi-regulatory capacity."). Simply put, immunity precludes the Complaint, even to the extent Plaintiff suggests that FINRA violates its own rules or exceeds its regulatory authority when it issues a halt that "results in a permanent or functionally permanent suspension of trading."[6] *See, e.g.*, Compl. ¶ 2.

---

[5] *See also Gallagher v. FINRA, Inc.*, No. 21-13605, 2022 U.S. App. LEXIS 15309, *7 (11th Cir. June 3, 2022) (the test for immunity does not turn on FINRA's "subjective intent or motivation"); *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 96 (2d Cir. 2007) (courts look to the nature of the function performed to determine whether immunity applies to an SRO's conduct); *Tawil v. FINRA*, No. 4:22-cv-440-RH-MAF, 2023 U.S. Dist. LEXIS 117247, *3 (N.D. Fla. May 24, 2023) ("A claim that FINRA got it wrong . . . is precisely the kind of claim from which FINRA should and does have immunity."); *Empire Fin. Grp. v. FINRA*, No. 08-80534-CIV, 2009 U.S. Dist. LEXIS 133643, *19 (S.D. Fla. Jan. 15, 2009) ("[Regulatory] immunity applies regardless of FINRA's alleged motives, and despite [plaintiff's] disagreement with how FINRA carried out this function.").

[6] *See Pee Pee Pop Tr. v. FINRA*, No. 3:19-cv-00240, 2019 U.S. Dist. LEXIS 165024, *11-12 (D. Nev. Sept. 26, 2019) (dismissing complaint based on immunity because plaintiffs alleged that "FINRA violated its own rules" and "regulatory immunity bars many of Plaintiffs' claims, including those claims alleging that Defendants exceeded the scope of their regulatory and investigatory authority"); *Standard Inv. Chartered, Inc. v. NASD*, 637 F.3d 112, 116 (2d Cir. 2011)

The fact that Plaintiff requests equitable relief does not change the immunity analysis. "[A]bsolute immunity is designed to shield entities from litigation, not just liability." *Rabin v. NASDAQ OMX PHLX LLC*, 182 F. Supp. 3d 220, 238 (E.D. Pa. 2016). "FINRA's absolute immunity is *not* restricted by the types of claims asserted against it by Plaintiff. . . . *This immunity extends to declaratory or injunctive relief*." *Cashmore v. FINRA*, No. 18-CV-1198S, 2020 U.S. Dist. LEXIS 209451, *14 (W.D.N.Y. Nov. 9, 2020) (denying claim for declaratory judgment) (emphasis added); *see also Hofman v. Fid. Brokerage Servs., LLC*, No. 2:23-cv-00881-MCS-PVC, 2023 U.S. Dist. LEXIS 81166, *18 (C.D. Cal. May 8, 2023) ("The Court adopts the persuasive reasoning of *Cashmore* and dismisses all claims [including declaratory relief] against FINRA . . . based on immunity."). Indeed, courts have consistently applied the absolute immunity afforded to SROs to bar claims when the relief sought was equitable in nature.[7]

Accordingly, absolute regulatory immunity bars Plaintiff's singular claim against FINRA, and the Complaint should be dismissed with prejudice.

---

(affirming dismissal based on immunity because proxy solicitation, which purportedly included misstatements, "was plainly 'incident to the exercise of regulatory power,' and therefore an activity to which immunity attached") (internal citation omitted); *see also In re NYSE Specialists Sec. Litig.*, 503 F.3d at 99 & n.4 (dismissing claims against NYSE based on allegations that it "violated its own internal rules" because "NYSE's decisions to act (or not to act) with respect to the [firms'] conduct is consistent with the powers delegated to it by the SEC") (internal quotation marks omitted).

[7] *See, e.g.*, *Tawil*, 2023 U.S. Dist. LEXIS 117247, *2 ("The [Eleventh Circuit's] broad description of immunity made no mention of the fact that the claim was for damages, and other courts have held FINRA immune from claims for injunctive relief."); *Buscetto v. FINRA*, No. 11-6308, 2012 U.S. Dist. LEXIS 65116, *11 n.4 (D.N.J. May 9, 2012) (FINRA "is entitled to immunity" where plaintiff sought to expunge and vacate his disciplinary record maintained by FINRA); *Lucido v. Mueler*, No. 08-15269, 2009 U.S. Dist. LEXIS 89775, *19-20 (E.D. Mich. Sept. 29, 2009) (denying injunctive relief on the ground of FINRA's regulatory immunity), *aff'd*, 427 Fed. App'x 497 (6th Cir. 2011); *Am. Benefits Grp., Inc. v. NASD*, No. 99 Civ. 4733, 1999 U.S. Dist. LEXIS 12321, *24 (S.D.N.Y. Aug. 10, 1999) (denying claim for injunctive relief against FINRA on immunity grounds).

### C. Plaintiff Has No Private Right of Action Against FINRA.

To the extent Plaintiff's claim rests on the allegation that FINRA violated, misinterpreted, or misapplied FINRA Rule 6440, neither the Exchange Act nor any other statute provides for a private right of action against an SRO, like FINRA. To the contrary, courts routinely hold that no private right of action exists against an SRO for its regulatory acts, omissions, or alleged violations of its own rules. *See In re Series 7*, 548 F.3d at 114 ("By specifically adopting an appeals process which does not provide monetary relief, Congress has displaced claims for relief . . . .").[8] Further, while FINRA rules must be consistent with the Exchange Act, FINRA rules do not create private rights of action that can be pursued in court. *North v. Smarsh, Inc.*, 160 F. Supp. 3d 63, 76 (D.D.C. 2015) ("[A] suit arises under the law that creates the cause of action.") (internal quotation marks and citation omitted); *see also Borg-Warner Protective Servs. v. EEOC*, 245 F.3d 831, 833 (D.C. Cir. 2001) ("[P]laintiff must be contending that a federally ordained rule specifically creates his cause of action.") (internal quotation marks and citation omitted).

Here, Plaintiff's single cause of action arises out of activity that FINRA is authorized to participate in while carrying out its regulatory obligations under the Exchange Act. *See generally*

[8] *See also MM&S Fin., Inc. v. NASD*, 364 F.3d 908, 911-12 (8th Cir. 2004) ("[T]he Exchange Act does not create a private right of action against NASD defendants for violating their own rules."); *Desiderio v. NASD*, 191 F.3d 198, 208 (2d Cir. 1999) ("[T]here is no private right of action available under the Securities Exchange Act . . . to challenge an exchange's failure to follow its own rules."); *Sparta Surgical*, 159 F.3d at 1213 ("a party has no private right of action against an exchange for violating its own rules or for actions taken to perform its self-regulatory duties under the [Exchange] Act"); *Feins v. AMEX*, 81 F.3d 1215, 1223-34 n.6 (2d Cir. 1996) (no private right of action exists against an SRO under Section 19 of the Exchange Act); *Spicer v. Chi. Bd. of Options Exch., Inc.*, 977 F.2d 255, 259-60 (7th Cir. 1992) (no private right of action exists under the Exchange Act against an SRO for failing to enforce its rules); *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 681 (9th Cir. 1980) (no private right of action for violations of stock association rules); *Louisiana v. Bank of Am., N.A.*, No. 19-638, 2021 U.S. Dist. LEXIS 63292, *13 (M.D. La. March 31, 2021) ("Courts have generally held that the violation of a FINRA or NASD rule does not create a private right of action because to do so would go against Congress's intent when passing the Securities Exchange Act.") (footnotes omitted).

Compl. Specifically, Plaintiff does not identify a specific halt imposed by FINRA, but he appears to challenge FINRA's ability to issue trade halts that exceed a certain length of time. Compl. ¶¶ 1, 9-12, 15-16. Thus, Plaintiff's claim is an attack on *how* FINRA *might* conduct its regulatory activities. But, as explained above, Plaintiff cannot state a claim against FINRA for alleged violations, misinterpretation, or inconsistent application of FINRA's rules. Thus, the Complaint should be dismissed with prejudice because Plaintiff is unable to state any private right of action against FINRA.

### D. Plaintiff Fails to State a Claim for Declaratory Judgment.

#### 1. Declaratory Relief Is Not a Freestanding Cause of Action.

As noted, the only cause of action identified in the Complaint is one for declaratory judgment. However, "[d]eclaratory judgments, injunctions, and accountings are not freestanding causes of action, but remedies that a plaintiff may obtain only upon prevailing on some independent claim." *Wilson v. On the Rise Enters., LLC*, 305 F. Supp. 3d 5, 19 (D.D.C. 2018) (dismissing declaratory judgment cause of action) (citing *C & E Servs., Inc. of Wash.*, 310 F.3d at 201 ("[T]he availability of declaratory relief presupposes the existence of a judicially remediable right."). Thus, since Plaintiff's only claim is a remedy and not a freestanding cause of action, the Complaint should be dismissed for failure to state a claim.

#### 2. Plaintiff Fails to State an "Actual Controversy."

Plaintiff fails to specify any injury to himself, Compl. ¶¶ 6, 13, or any trade halt performed by FINRA for which he complains, *id.* ¶¶ 10, 13, which is fatal to his single cause of action for declaratory judgment. "The declaratory judgment procedure is available in the federal courts only in cases involving ***an actual case*** or controversy, where the issue is ***actual and adversary***, and it may not be made the medium for securing an advisory opinion in a controversy which has not arisen." *Coffman v. Breeze Corps.*, 323 U.S. 316, 324 (1945) (emphases added) (internal citations

omitted) (affirming dismissal of claim for declaratory relief for want of justiciable controversy and failure to demonstrate injury); *see also Golden v. Zwickler*, 394 U.S. 103, 108 (1969) ("concrete legal issues," not "abstractions," are requisite for declaratory judgments). The test to establish an actual controversy "is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality[.]" *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941).

Here, there is no immediate controversy – Plaintiff merely alludes to vague "circumstances" under which he contends FINRA acted in excess of its authority and without any concrete, particularized injury to him. Compl. ¶¶ 10, 13. The lack of an actual controversy or injury means the Complaint seeks an opinion that is merely advisory in nature. As a result, the Complaint should be dismissed. *Golden*, 394 U.S. at 108 ("The federal courts established pursuant to Article III of the Constitution do not render advisory opinions.").

### E. The Complaint Fails to Satisfy the Requirements of Rule 8.

Alternatively, FINRA respectfully requests that the Complaint be dismissed pursuant to Rule 8 because it does not provide FINRA with notice regarding any actual and specific trade halt. Rule 8 establishes that every complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief" and that "each averment of a pleading be simple, concise, and direct." Fed. R. Civ. P. 8(a), (d)(1). Pursuant to these Rules, "[t]he court or opposing party must be able to understand whether a valid claim is alleged and if so[,] what it is." *Poblete*, 657 F. Supp. 2d at 96.

The Complaint, as noted above, does not set forth any precise trade halt, nor does it set forth any concrete, particularized injury. *See generally* Compl. Dismissal under Rule 8 is permitted where "the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Banks v. Gonzales*, 496 F. Supp. 2d 146, 149 (D.D.C. 2007);

*see also Ciralsky*, 355 F.3d at 670 n.9. Although pleadings filed by pro se litigants are held to less stringent standards than formal pleadings drafted by lawyers, pro se litigants still must comply with the Federal Rules of Civil Procedure. *Jarrell v. Tisch*, 656 F. Supp. 237, 239 (D.D.C. 1987).

Instructive here is *Estate of Mickens v. U.S. Bank N.A.*, No. 18-cv-928, 2021 U.S. Dist. LEXIS 146470, *9-16 (D.D.C. Aug. 5, 2021). The court found that pleading was insufficient where it set forth "allegations that appear to be critical to the viability of [plaintiffs'] legal claims [but] are wholly lacking in the factual detail" necessary for the defendant to prepare a response. *Id.* at *14. For example, the plaintiffs alleged the defendant charged excessive fees but did not allege "which *specific* fees" or why they were unreasonable. *Id.* at *15 (emphasis in original). As in *Mickens*, the Complaint here does not provide FINRA with any specific facts, including a specific trade halt or purported injury, to place FINRA on notice or permit it to prepare a defense. Accordingly, the Complaint should be dismissed under Rule 8.

## V. CONCLUSION

For the foregoing reasons, FINRA respectfully requests that the Court grant its Motion to Dismiss the Complaint. FINRA further requests that the dismissal be with prejudice and any request for leave to amend be denied on the grounds that FINRA's regulatory immunity and Plaintiff's lack of a private right of action would render any amendment futile. *Foman v. Davis*, 371 U.S. 178, 182 (1962) (court may deny leave to amend if amendment would be futile); *see also Willoughby v. Potomac Elec. Power Co.*, 100 F.3d 999, 1003 (D.C. Cir. 1996) (affirming the district court's denial of leave to amend given the "little chance" that plaintiff would succeed on his claim).

Dated: March 23, 2026

Respectfully submitted,

*/s/ John P. Mitchell*
Anthony F. Jankoski (DC #90022125)
FAEGRE DRINKER BIDDLE & REATH LLP
1500 K Street N.W., Suite 1100
Washington, D.C. 20005
Tel: +1 202 230 5000
Fax: +1 202 842 8465
anthony.jankoski@faegredrinker.com

John P. Mitchell (admitted *pro hac vice*)
FAEGRE DRINKER BIDDLE & REATH LLP
105 College Road East, Suite 300
Princeton, New Jersey 08542-0627
Tel: (609) 716-6586
Fax: (609) 799-7000
john.mitchell@faegredrinker.com

**CERTIFICATE OF SERVICE**

The undersigned counsel hereby certifies that on March 23, 2026, a true and correct copy of the foregoing Defendant Financial Industry Regulatory Authority, Inc.'s Motion to Dismiss Plaintiff's Complaint, supporting statement of points and authorities, and proposed order were filed via this Court's electronic filing system and served via electronic mail, pursuant to Fed. R. Civ. P. 5(b)(2)(E), upon Plaintiff, who has provided written consent for such service at jacobgillmore@gmail.com.

*/s/ John P. Mitchell*
John P. Mitchell